UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE UHRYNOWSKI and
JO ANN UHRYNOWSKI,

    Plaintiffs,

                                  HONORABLE DENISE PAGE HOOD

v.

                                  CASE No. 06-15483

COUNTY OF MACOMB, G. R. SCHELL,
HOFFMAN, WILLIAM HANGER, HORNE,
AMOS HORTON, RUTTAN, GLASS, and
KENNEDY,

    Defendants.
_____/

**MEMORANDUM OPINION AND ORDER
AND
<u>NOTICE OF SCHEDULING CONFERENCE</u>**

**I.    INTRODUCTION**

This matter is before the Court on two motions to dismiss by the Macomb County Defendants and three Michigan State Police officers. The Macomb County Defendants include: the County of Macomb, Gregory Schell, Ryan Ruttan, Aaron Horne, John Glass and David Kennedy. The Michigan State Police officers include: Amos Horton, William Hangar and Derek Hoffman. Responses have been filed and a hearing held on the motions.

**II.    STATEMENT OF FACTS**

Count I of the Complaint is entitled "Assault and Battery," a state law claim, and alleges that Defendants knowingly assaulted and battered Plaintiffs. Count I also alleges a federal claim of excessive force in violation of the Fourth Amendment to the United States Constitution.

Count II of the Complaint is entitled "False Arrest and False Imprisonment," a state law

claim, and alleges that Defendants knowingly violated Plaintiffs' right to freedom from false arrest and false imprisonment. Count II also alleges a federal claim of a violation of the substantive due process clause of the Fourteenth Amendment to the United States Constitution by the Defendants.

Count III of the Complaint alleges a state law claim of intentional infliction of emotional distress and a federal claim of retaliatory conduct in violation of the First and Fourteenth Amendment to the United States Constitution by the Defendants.

Count IV of the Complaint only alleges a federal claim of cruel and unusual punishment by the Defendants in violation of the Fourteenth Amendment to the United States Constitution.

Count V of the Complaint alleges that Defendant Macomb County Sheriff's Department did not have the appropriate and proper policies and procedures to provide the appropriate care and handling of prisoners, such as Mr. Uhrynowski. Defendant Macomb County Sheriff's Department failed to train its police officers from being released to transport officers and transferred in an unstable medical condition to the 41A District Court.

Count VI of the Complaint is entitled, "Municipal Liability of Macomb County Sheriff's Department." However, the actual factual allegations in Count VI addresses Defendant Macomb County's liability to Plaintiffs. Count VI alleges that Defendant Macomb County authorized, tolerated, ratified, permitted or acquiesced in the creation of policies, practices and customs, including, but not limited to: failure to supervise COMET officers; failure to provide any means by which COMET officers' activities are verified; failure to require COMET officers to properly identify themselves as law enforcement officials; failure to require exculpatory facts to be included in applications for arrest warrants; failure to require inmates be provided with adequate clothing and bedding; failure to prevent inmates from suffering prolonged exposure to inclement weather; failure

to require heat in transport vans to be turned on; failure to properly heat jail cells; failure to promulgate policies that special needs inmates, such as the elderly and disabled; and failure to impose affirmative duty to dispatch uniformed police officers and uniformed officers in marked police cars at the request of affected citizens.

Count VII alleges that Defendant Macomb County violated the Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1301, when Mr. Uhrynowski was denied the benefit of public services and accommodations, namely, police protection against assaults and batteries and adequate clothing and bedding while in custody.

Plaintiffs' claims arise out of the events occurring on December 11, 2003. Plaintiffs, 70-year-old Eugene Uhrynowski and his wife Jo Ann Uhrynowski, were attending a family gathering at their daughter's home. (Complaint, ¶ 26). The Uhrynowski's daughter had a son, Joshua, who did not live at the home. (Pls.' Br. in Opp. at 1). Joshua's parents repeatedly received threatening phone calls from unidentified individuals claiming that Joshua owed them money. (Complaint, ¶¶ 26-27).

During the family gathering, Joshua entered the home yelling: "Don't let them in, they are after me." *Id.* Four men in plainclothes then forced their way into the home. *Id.* The unknown men claimed to be police officers, but they refused to produce a badge, warrant, or any other form of identification. *Id.* Plaintiffs contacted the Macomb County Sheriff's department seeking verification that the men in the home were, in fact, police officers. (Complaint, ¶¶ 36-40). Several attempts were made to obtain information about the unidentified men from the Sheriff's department, but were refused. *Id.* Plaintiffs later learned that the men were undercover police officers working as part of a Macomb County surveillance unit known as COMET. (Pls.' Br. in Opp. at 1).

At one point, Eugene Uhrynowski witnessed the men push past his wife, Jo Ann Uhrynowski, knocking her to the floor. (Complaint, ¶¶ 41, 44). Intervening to protect his wife, Mr. Uhrynowski demanded that the men prove they were police officers. (Pls.' Br. in Opp. at 2). At that point, the men handcuffed and arrested Mr. Uhrynowski. *Id.* Mr. Uhrynowski's family then informed the men that Mr. Uhrynowski had recently had surgery on his right shoulder. After Mr. Uhrynowski was placed under arrest, an officer sliced Mrs. Uhrynowski's fingers when he "violently and aggressively" pulled Mr. Uhrynowski's plastic identification card out of her hand. *Id.* The unidentified men, then, threatened to arrest Mrs. Uhrynowski. (Complaint, ¶ 53).

As Mr. Uhrynowski was being place into a transport vehicle one of the officers grabbed Mr. Uhrynowski's injured shoulder causing him pain. (Complaint, ¶ 65). Officers told the family that Mr. Uhrynowski would be charged with a misdemeanor. (Complaint, ¶ 59). Upon arriving at the Macomb County Jail, family members were informed that Mr. Uhrynowski had been charged with a felony and would not be arraigned until the following day. (Complaint, ¶ 69).

After the family notified the jail staff that Mr. Uhrynowski was a 70-year old cancer survivor who was still recovering from recent shoulder surgery, Mr. Uhrynowski was placed into a cold jail cell. (Complaint, ¶ 73). Mr. Uhrynowski wore only the light weight jail clothing the jail provided. No blankets were provided. (Complaint, ¶ 74). The following morning, Mr. Uhrynowski was placed into a heatless transport vehicle wearing only the clothing the jail provided him the night before. (Pls.' Br. in Opp. at 2). Shortly after his release from jail, Mr. Uhrynowski was hospitalized with acute atrial fibrillation induced by hypothermia. *Id.* at 2-3. On March 5, 2005, all criminal charges against Mr. Uhrynowski were dismissed with prejudice. *Id.* Plaintiffs thereafter filed the instant suit against Defendants.

4

## III. APPLICABLE LAW AND ANALYSIS

### A. Rule 12(b)(6) Standard of Review

A defendant may move to dismiss, under Fed.R.Civ.P. Rule 12(b)(6), for a failure to state a claim upon which relief can be granted. The purpose of the motion is to test the adequacy of the plaintiff's claims. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). Under Rule 12(b)(6), the Court assumes the truthfulness of the Complaint's factual allegations when evaluating the propriety of the dismissal. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Construing the complaint in the light most favorable to the plaintiff, the Court determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his/her claims that would entitle him/her to relief. *Varljen v. Cleveland Gear Co., Inc*, 250 F.3d 426, 429 (6th Cir. 2001). The Court will not consider the parties' exhibits since no discovery has taken place in this case.

### B. Macomb County Defendants' Motion to Dismiss

#### 1. Claims

In their motion, the Macomb County Defendants claim: (1) that Plaintiffs' claims of assault and battery, false arrest and false imprisonment are barred by the statute of limitations, (2) that the valid constitutional claims, if any, are barred by qualified immunity, and (3) that all of Plaintiffs' remaining claims should be dismissed for failure to state a claim.

In their response to the Macomb County Defendants' Motion to Dismiss, Plaintiffs made the following statement, "[f]or reasons known only to the County Defendants, they profess confusion and assert that Plaintiffs' seven-count complaint might actually have eleven possible claims. For Defendants edification, Counts I-IV state federal civil rights violations, not Michigan state law

claims." (Pls.' Br. in Opp. at 4)  Plaintiffs also assert "[t]here are no Michigan law assault and battery, false arrest, false imprisonment, gross negligence or intentional infliction of emotional distress claims." (Pls.' Br. in Opp. at 4)

The Court notes that the "confusion" stemmed from the way Plaintiffs' Complaint was labeled. As the Court noted above, Count I is labeled "Assault and Battery," with language indicating "gross negligence." Count II is labeled "False Arrest and False Imprisonment" and Count III is labeled "Infliction of Emotional Distress/Retaliation." The labels and language used in these three counts allege state law claims, in addition to federal 42 U.S.C. § 1983 claims. In any event, inasmuch as Plaintiffs are dismissing their state law claims, those claims are dismissed.

Based on Plaintiffs' response, Plaintiffs' claims allege: Count I, Fourth Amendment Excessive Force; Count II, a Fourth and Fourteenth Amendments claim for unlawful seizure and arrest without probable cause; Count III, First and Fourteenth Amendments for Emotional Distress/Retaliation (even though Plaintiffs also alleged above they do not have a state law claim for intentional infliction of emotional distress); Count IV, a Fourteenth Amendment due process violation based on deliberate indifference of serious medical needs and unconstitutional conditions of confinement; Counts V and VI municipal liability for inadequate training, supervision, instruction and policies under the Fourth and Fourteenth Amendment; and Count VII, a claim under the PWDCRA.

### 2. Qualified Immunity/Individual Macomb County Defendants/Count I

The Macomb County Defendants move to dismiss based on qualified immunity on Plaintiffs' Fourth Amendment claim against the individual Macomb County Defendants.

Government officials are entitled to qualified immunity where their actions do not "violate

6

clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officers would have concluded that [the action at issue was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). "To successfully state a claim under 42 U.S.C. § 1983, a Plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met: (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987). As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific

constitutional grounds for asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-394 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).

If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993).

"The right to be free from excessive force is a clearly established right. Excessive force claims are to be analyzed under the Fourth Amendment's 'objectively reasonable' test, not under a substantive due process standard." *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386 (1989)).

As to whether the officers' actions were reasonable, taking the Complaint as true as required under Rule 12(b)(6), the excessive force claim cannot be dismissed at this time. Plaintiffs state that Defendants "with malicious intent ... knowingly assaulted and battered Plaintiffs without reason excuse or justification. Said use of force was excessive and shocks the conscience in violation of the Fourth Amendment to the United States Constitution." (Complaint, ¶¶ 93-94) Mrs. Uhrynowski

was knocked to the ground and her hand was cut. (Complaint, ¶¶ 44, 52) Mr. Uhrynowski's recently operated on shoulder and upper arm were grabbed with great force for the purpose of inflicting pain and punishment. (Complaint, ¶ 65) Based on the factual allegations in the Complaint, Plaintiffs have stated an excessive force claim upon which relief may be granted.

Since this is a Rule 12(b)(6) motion, the Court reviews the Complaint to determine whether any factual allegations were made by Plaintiffs against the individual Macomb County Defendants. It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by each of the named defendants. *See Salehphour v. Univ. of Tenn.,* 159 F.3d 199, 206 (6th Cir.1998).

The Complaint alleges that Macomb County Defendants Horn and Schell were assigned as COMET officers. (Complaint, ¶ 12) COMET officers entered a private property with force, without consent or a warrant. (Complaint, ¶ 29) The officers pushed past Mrs. Uhrynowski, knocking her to the ground. (Complaint, ¶ 44) A COMET officer grabbed Mr. Uhrynowski's injured shoulder/upper arm with great force and violence. (Complaint, ¶ 65) At the Rule 12(b)(6) motion stage, there are sufficient factual allegations against Macomb County Defendants Horn and Schell to support an excessive force claim in Count I. The excessive force claims against individual Defendants Kennedy, Ruttan and Glass must be dismissed since there are no factual allegations in the Complaint that indicate these Defendants were at the premises when the excessive force was allegedly used against Plaintiffs.

### 3. Statute of Limitations/Count II

The Macomb County Defendants argue that Count II, the Fourth Amendment claim based upon false arrest/imprisonment, is barred by Michigan's two-year statute of limitations for false

9

arrest and false imprisonment. M.C.L.A. § 600.5805(2). Plaintiffs argue that the statute of limitations filed in Michigan based on § 1983 is three years, not two years, even if the underlying wrongful conduct stems from a false arrest, citing *McCune v. City of Grand Rapids,* 842 F.2d 903, 905-06 (6th Cir. 1988).

Courts have held that § 1983 claims are characterized as tort actions for the recovery of damages for personal injury and that federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 case was filed. *Cooey v. Strickland,* 479 F.3d 412, 416 (6th Cir. 2007). "If a state has more than one statute of limitations for personal injuries, the state's residual or general statute of limitations governing personal injury actions is applied to all § 1983 actions brought in that state. *Id.* (citing *Owens v. Okure,* 488 U.S. 234, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)). This Court has held that the general three-year statute of limitations governing personal injury actions in Michigan governs in cases filed under § 1983 in this state. *McCune,* 842 F.2d at 905. Federal law determines when the statute of limitations for a civil rights action begins to run. *Wallace v. Kato,* 127 S.Ct. 1091, 1095 (2007). The Supreme Court has held that the statute of limitations upon a § 1983 claim for false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process, such as an arraignment or when a claimant is bound over for trial. *Id.* at 1096, 1100.

In this case, Mr. Uhrynowski was arrested on December 11, 2003 and arraigned on December 12, 2003. The Complaint in this case was filed on December 11, 2006. Plaintiffs' claim alleging a Fourth Amendment violation based on false arrest and false imprisonment is timely since the Complaint was filed within three years after the legal process, in this case, the arraignment.

10

For the reasons set forth above, the Macomb County Defendants Horn and Schell remain as defendants as to the false arrest and false imprisonment claim since they were present at the time Mr. Uhrynowski was arrested. The false arrest and false imprisonment claims are dismissed against individual Defendants Kennedy, Ruttan and Glass, since the Complaint does not show that they were present at the time Mr. Uhrynowski was arrested.

### 4. First Amendment Retaliation Claim/Count III

Defendants claim that Plaintiffs' First Amendment Retaliation claim should be dismissed because Plaintiffs cannot show that the individual County Defendants initiated or participated in the adverse action precipitated by the exercise of protect speech. Plaintiffs claim that they were subjected to a retaliatory arrest and retaliatory use of excessive force when they challenged Defendants to identify themselves and to establish the propriety of their presence on the premises.

To establish a *prima facie* Section 1983 First Amendment retaliation claim, a plaintiff must demonstrate: 1) that he was engaged in a constitutionally protected activity; 2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and, 3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Strouss v. Michigan Dep't of Corrections,* 250 F.3d 336, 345 (6th Cir. 2001); *Mattox v. City of Forest Park*, 183 F.3d 515, 520 (6th Cir.1999); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).

Taking the Complaint as true as required in a Rule 12(b)(6) motion, Plaintiffs have stated a claim upon which relief may be granted. The Complaint alleges that Plaintiffs reported the COMET Officers' unlawful entry, unlawful use of force, unlawful arrest, failure to produce a warrant and failure to properly identify themselves to the Macomb County Sheriff's Department,

the Sterling Heights Police Department and the Michigan State Police. (Complaint, ¶ 102) Plaintiffs have met the first prong.

As to the second prong–adverse action, although there are no facts set forth under Count IV as to what adverse action caused Plaintiffs' injuries, Plaintiffs' brief in response points to facts set forth in other parts of the Complaint. Specifically, it appears Plaintiffs are claiming that after the COMET Officers were advised of the reports to the various police agencies, instead of being charged with a misdemeanor, Mr. Uhrynowski was instead charged with a felony. (Complaint, ¶¶ 66-67) Plaintiffs have met the second prong.

Regarding the third prong–that the adverse action was motivated at least in part by Plaintiffs' exercise of reporting the COMET Officers' actions, it appears that Plaintiffs have also met this prong in that it was not until the COMET Officers were advised of the reports made by Plaintiffs that the charge against Mr. Uhrynowski was raised from a misdemeanor to a felony. Plaintiffs have stated a claim of retaliation.

Addressing whether the Complaint sufficiently identifies the Macomb County Defendants involved in this claim, the Court finds that Macomb County Defendants Horn and Schell were present at the time of the arrest. Defendants Kennedy and Glass also remain at this time since Plaintiffs allege that Defendant Kennedy and Glass arranged to have the COMET task force to appear at the home where Plaintiffs were present at the time of the arrest. Defendant Ruttan must be dismissed since he was not present at the time of the arrest.

### 5. Fourteenth Amendment Conditions of Confinement/Count IV

The Macomb County Defendants argue that this claim only applies to the municipality since Plaintiffs did not identify any individual officers who allegedly acted with deliberate indifference to Mr. Uhrynowski's serious medical needs nor do Plaintiffs identify a policy by Macomb County which would subject Macomb County to liability.

In their response, Plaintiffs do not identify the individual jail personnel who were allegedly deliberately indifferent to Mr. Uhrynowski's serious medical needs. They cite cases which hold that being exposed to cold temperatures may be a violation of the Eighth Amendment.

Under the Eighth Amendment, prison inmates have a right to a certain level of medical care. Deliberate indifference to the serious medical needs of a prisoner violates this Eighth Amendment right by subjecting them to cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Sanderfer v. Nichols*, 62 F.3d 151, 153 (6th Cir. 1995). Pretrial detainees enjoy analogous protection under the Fourteenth Amendment Due Process Clause found under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520 (1979); *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). The standard encompasses two components: objectively, the medical needs must be sufficiently serious, and subjectively, the state actors involved must have acted in a deliberately indifferent manner. *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992).

A review of Count IV shows that Plaintiffs may have met the first component of the standard–the medical needs must be sufficiently serious. However, the Complaint does not identify the state actors involved who may have acted in a deliberately indifferent manner. The factual assertions do not identify which jail personnel deprived Mr. Uhrynowski with clothing, pillows or blankets, other than a reference to Defendant Sgt. Glass being advised of Mr. Uhrynowski's physical

13

condition and special needs. (Complaint, ¶¶ 70-84) The Complaint is silent as to whether Defendant Glass' actions were deliberately indifferent. Count IV must be dismissed.

### 6. Municipal Liability of Macomb County Sheriff's Department/Count V

Count V alleges that the Macomb County Sheriff's Department violated Plaintiffs' rights by the failure to train deputies, detention officers and jail personnel in appropriate and immediate need for medical intervention such as Mr. Uhrynowski.

Count V must be dismissed since the only allegation is against the Macomb County Sheriff's Department. A municipal police department is not a legal entity capable of being sued. *Matthews v. Jones*, 35 F.3d 1046 (6th Cir. 1994); *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 32 F.3d 989 (6th Cir. 1994).

### 7. Municipal Liability of Macomb County/Count VI

Although Count VI is labeled "Municipal Liability of Macomb County Sheriff's Department," the allegations in the count allege that Defendant Macomb County is a person under Section 1983. (Complaint, ¶ 121)

In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

A review of Count VI reveals that Plaintiffs allege that policies attributable to the County, such as failure to supervise COMET Officer, failure to require inmate be provided with adequate

clothing and bedding, failure to prevent to properly heat jail cells, etc. Taking the Complaint as true, as required under Rule 12(b)(6), Plaintiffs have stated a claim of municipal liability as to Defendant Macomb County on the policies and failure to train claims set forth in Count VI.

### 8. Persons with Disabilities Civil Rights Act/Count VII

The Macomb County Defendants argue that the Court should dismiss Plaintiffs' claim for violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") against Defendant Macomb County for failure to state a claim. Defendants refute Plaintiffs' claim on three grounds: (1) that the Act does not impose a duty on law enforcement agencies to provide police protection from assault and batteries; (2) that the Act does not provide special rights to county jail detainees; and (3) that the Act, on its face, excludes county jails from its application. (Defs.' Mot. to Dismiss at 7).

Plaintiffs argue that police departments are places of public services as defined by the provisions of the Act. Defendants, therefore, had a duty to: (1) provide protection against assault and batteries, and (2) to provide adequate clothing and bedding while Mr. Uhrynowski was in custody. (Pls.' Br. in Opp. at 18)(citing *Gazette v. City of Pontiac*, 212 Mich. App. 162, 169 (1995)); (Complaint, ¶ 126).

The PWDCRA, M.C.L. § 37.1302(a) states:

> [T]he full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.

M.C.L. § 37.1302(a). The Act defines "public service" as:

> a public facility, department, agency, board, or commission owned,

> operated, or managed by or on behalf of this state or a subdivision of this state, a county, city, village, township, or independent or regional district in this state or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions or decisions regarding an individual serving a sentence of imprisonment.

M.C.L. § 37.1301(b).

For the following reasons, the Court finds that Plaintiffs have sufficiently stated a claim under PWDCRA. Defendant argues that Plaintiffs cannot prove that law enforcement agencies have a duty to police protection from assault and battery. Plaintiffs state that the county jail employees had knowledge of Mr. Uhrynowski's various health conditions. (Complaint, ¶ 70). Defendant is correct in that the Act does not explicitly impose a duty, but the Court is not convinced that it is impossible for Plaintiffs to prove that a duty does exist. Even if the Court found that it was impossible to establish such a duty, Plaintiffs still have a meritorious argument in asserting that there was a duty to provide Mr. Uhrynowski with adequate clothing and bedding.

Defendants argue that the Act excludes the county jails, on its face. M.C.L. § 37.1301(b) states that "public service does not include a state or county correctional facility with respect to actions or decisions regarding an individual serving a sentence of imprisonment." The plain meaning of the statute's language excludes correctional facilities only in regard to persons serving prison sentences. When the language is clear and unambiguous, the Court will use the plain meaning of the language to interpret the statute. *United States v. Choice,* 231 F.3d 837 (6th Cir. 2000).

It is undisputed that Mr. Uhrynowski was not serving a prison sentence. Under the plain meaning of the statute, pre-trial detainees, such as Mr. Uhrynowski, are not excluded from the

16

purview of the Act. Although courts have noted that there is a serious question as to whether the legislation applies to pre-trial detainees, at the Rule 12(b)(6) motion stage, the Court will not dismiss the claim since no cases in Michigan or in this Circuit have held that the Act does not apply to pre-trial detainees. Dismissal of the claim is premature.

### 9. Summary of the Macomb County Defendants' Motion to Dismiss

The claims against Defendants Horn and Schell remain as to the excessive force claim (Count I) and dismissed as to Defendants Kennedy, Ruttan and Glass. Defendants Horn and Schell remain as defendants in Count II, the false arrest and false imprisonment claims, and Defendants Kennedy, Ruttan and Glass are dismissed from Count II. As to the retaliation claim (Count III), Defendants Horn, Schell, Kennedy and Glass remain as defendants and Defendant Ruttan is dismissed. The Eighth Amendment/Fourteenth Amendment claim in Count IV is dismissed against all Defendants. Count V is dismissed since the only allegation is against the Macomb County Sheriff's Department. Count VI, the policy and failure to train claims against Defendant Macomb County only remains. Count VII, the PWDCRA claim, remains as to Defendant Macomb County only.

### C. State of Michigan Defendants' Motion to Dismiss

#### 1. Claims

The State of Michigan Defendants Horton, Hanger and Hoffman argue that Plaintiffs' allegations of state law violation will not support Plaintiffs' civil rights claims under 42 U.S.C. § 1983 and must be dismissed under Fed. R. Civ. P. 12(b)(6). As stated by Plaintiffs in their response brief to the Macomb County Defendants' Motion to Dismiss, they are not alleging state law claims against Defendants.

17

### 2. Counts I, II and III

For the same reasons set forth above, taking the Complaint as true, as required under Rule 12(b)(6), Plaintiffs have stated a claim for an unconstitutional use of excessive force (Count I), unconstitutional arrest and imprisonment (Count II) and First Amendment retaliation (Count III). The State of Michigan Defendants Horton, Hangar and Hoffman are identified as COMET officers. (Complaint, ¶ 12) The COMET officers entered a private property, with force and without a warrant. (Complaint, ¶¶ 28-35) The excessive force claim (Count I) alleges that "[a]s a result of Defendants' use of force," Plaintiffs suffered injury. (Complaint, ¶ 95) Count II alleges that Defendants violated Plaintiffs' right to freedom from false arrest and false imprisonment. (Complaint, ¶ 98) The retaliation claim (Count III) alleges that "[a]s a result of Defendants' retaliatory conduct," Plaintiffs' suffered injury.

### 3. Count IV

The federal claim of cruel and unusual punishment under the Fourteenth Amendment is dismissed for failure to state a claim as more fully set forth above.

### 4. Counts V, VI and VII

The municipal liability claims found in Counts V, VI and VII are dismissed as to the State of Michigan Defendants since the Counts clearly allege liability as to either the Macomb County Sheriff Department or Macomb County only. There are no factual allegations against the State of Michigan Defendants in Counts V, VI and VII.

### 5. Summary of the State of Michigan Defendants' Motion to Dismiss

As more fully set forth above, Counts I, II and III remain as to the State of Michigan Defendants Horton, Hangar and Hoffman. Counts IV, V, VI and VII are dismissed against the State

of Michigan Defendants.

**IV.    CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that the State of Michigan Defendants Hangar, Hoffman and Horton's Motion to Dismiss **(Docket No. 2, filed January 23, 2007)** is GRANTED IN PART and DENIED IN PART as more fully set forth above.  Counts I, II and III remain as to Defendants Horton, Hangar and Hoffman.  Counts IV, V, VI and VII are DISMISSED against Defendants Horton, Hangar and Hoffman.

IT IS FURTHER ORDERED that the Macomb County Defendants' Motion to Dismiss Complaint **(Docket No. 14, filed February 19, 2007)** and Amended Motion to Dismiss Complaint **(Docket No. 15, filed February 22, 2007)** are GRANTED IN PART and DENIED IN PART as more fully set forth above.  Defendants Horn and Schell remain as defendants in Count I and Defendants Kennedy, Ruttan and Glass are DISMISSED from Count I.  Defendants Horn and Schell remain as defendants in Count II and Defendants Kennedy, Ruttan and Glass are DISMISSED from Count II.  Defendants Horn, Schell, Kennedy and Glass remain as defendants in Count III and Defendant Ruttan is DISMISSED from Count III.  Count IV is DISMISSED against all Defendants.  Count V is also DISMISSED.  Defendant Macomb County only remains in Counts VI and VII.

IT IS FURTHER ORDERED that a Scheduling Conference with the remaining parties is scheduled for **Tuesday, November 13, 2007, 2:15 p.m.**

s/ DENISE PAGE HOOD<br>DENISE PAGE HOOD<br>United States District Judge

DATED: October 12, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 12, 2007, by electronic and/or ordinary mail.

S/William F. Lewis<br>Case Manager